# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

NICHOLAS BUSH,

     Plaintiff,

     v.

EMMANUEL OWOBU,

     Defendant.

Civil Action No. CCB-14-2351

## MEMORANDUM OPINION

Plaintiff Nicholas Bush, a State of Maryland inmate currently confined at the Western Correctional Institution ("WCI") in Cumberland, Maryland, alleges that on June 11, 2014, while incarcerated at the Jessup Correctional Institution ("JCI"), in Jessup, Maryland, his left hand was on the "feed up slot" in his cell door when Officer Emmanuel Owobu closed the slot, injuring Bush's hand. Bush asserts that the JCI handbook states that inmates are to be free from abuse and that inmates are not to be subjected to corporal punishment, personal abuse or personal injury.

Defendant Emmanuel Owobu asserts that Bush interfered with Owobu while Owobu was securing the "feed up slots" on Bush's housing tier. He indicates that he was injured by Bush when attempting to close the slot by Bush forcefully pushing the feed up slot open. Thereafter, Owobu notes that he only used the amount of force necessary to close the slot and that Bush was not standing near the slot when he closed and locked it.

Presently pending before the Court is Defendant's Motion for Summary Judgment, ECF No. 22.   Bush has not responded.[1]  Defendant's Motion for Summary Judgment will be GRANTED.

## BACKGROUND

### I.    Incident on January 11, 2014

Officer Owobu was assigned as the A and B wings officer of the Special Confinement Housing Unit B Building at JCI on January 11, 2014. ECF No. 22-3, p. 3; ECF No. 22-11, ¶ 4. Part of Owobu's duties included securing and locking the feed up slots on the tier after meals were served. ECF No. 22-11, ¶ 4; ECF No. 22-10, ¶ 8.  Chief of Security Allen Gang describes a feed up slot as a rectangular security panel in the metal cell door. The slot opens to permit staff access to the inmate without having to open the door. ECF No. 22-10, ¶4.  The feed up slot is a passage between the inmate inside the cell and staff outside the cell allowing for the receipt of food or administration of medication, and for the application and removal of the inmate's handcuffs. *Id*. The feed up slot must be secured and locked after meal trays are retrieved because an open slot poses a security risk on the tier. *Id*., ¶ 5.  While the feed up slot is being secured and locked, an inmate is prohibited from holding, pushing or kicking the slot. *Id*., ¶ 6.  The feed up slot cannot mechanically be secured and locked if an inmate's hand is inside the slot. *Id*.

On the morning of January 11, 2014, the inmates were served breakfast in their cells and thereafter an inmate worker retrieved the inmates' food trays through the feed up slots. ECF No.

---

[1]Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on August 27, 2015, Bush was notified that Owobu had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 23. Bush was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact could result in the dismissal of his case or in the entry of summary judgment without further notice by the Court.  *Id*.

22-11, ¶ 5; ECF No. 22-9, at 6:08.  Owobu then began securing and locking the feed up slots.

ECF No.  22-9, at 6:10; ECF No. 22-11, ¶ 5.  As Owobu began closing Bush's feed up slot, Bush

forcefully pushed the slot out, hitting Owobu's left palm and injuring Owobu's thumb.  ECF No.

22-3, p. 4; ECF No. 22-8, pp. 5–8; ECF No. 22-11, ¶6.

Owobu avers that after he was injured Bush began celebrating in his cell stating "I got

him.  I got him."  ECF No. 22-6, p. 1; ECF No. 22-11, ¶ 6. Owobu then used his uninjured hand

to close and secure the feed up slot.  ECF No. 22-9, at 6:11; ECF No. 22-11, ¶7. Owobu avers

that the feed up slot was secured and locked without incident. ECF No. 22-11, ¶ 7.  Thereafter

Owobu notified the Officer in Charge of the tier, Sergeant Kevin Eberhardt, of the incident. ECF

No. 22-11, ¶ 8; ECF No. 22-3, p. 4; ECF No. 22-10, ¶10. Eberhardt directed Owobu to step off

of the tier and proceed for a medical evaluation, and the incident was referred to Duty Supervisor

Lieutenant Carlie Nelson. ECF No. 22-5, pp. 3–4; ECF No. 22-3, pp. 3–4.

Bush was interviewed regarding his complaint that Owobu had pushed the slot closed on

his finger, and he was evaluated in the medical department. ECF No. 22-3, p. 4; ECF No. 22-5,

pp. 1–3; ECF No. 22-12, p. 2.

A Serious Incident Report was prepared on the date of the incident by Captain Kevin

Hight. ECF No. 22-4, pp. 1–3.  The Internal Investigative Unit ("IIU") was notified of the

incident.  ECF No. 22-3, p. 4; ECF No. 22-5, pp. 1–3.  Captain Francine Davis was assigned to

investigate the case. ECF No. 22-3, p. 2.  Davis noted that she reviewed the video surveillance

which showed Owobu attempting to close the feed up slot in a "forceful[] manner," but the video

did not give a clear view of the inmate and his actions. ECF No. 22-3, p. 4; ECF No. 22-9, at

6:11.  Owobu avers that he needed to exert more effort to close the slot because he was only able

to use his uninjured hand. ECF No. 22-11, ¶ 7.  Security Chief Gang asserts that it is possible

that Owobu spontaneously closed the feed up slot using his uninjured hand in an effort to complete his duty of securing the feed up slots on the tier before notifying his superior of the incident.  ECF No. 22-10, ¶ 9. Gang also notes that generally an officer uses both hands to lock the feed up slot. *Id*.

Bush provided written statements regarding the incident and admitted he purposefully held the feed up slot open. ECF No. 22-7, pp. 1–2.  In his first statement, given on January 11, 2014, Bush claimed he did not injure Owobu and wanted to file charges against Owobu.  *Id*., p. 1.  In his second statement, provided on March 4, 2014, Bush admitted he saw Owobu trying to close the feed up slot but stated that he told Owobu to "hold on" and put his hand on the slot and pushed the slot which must have hit Owobu's hand.  *Id*., p. 2.  Bush was interviewed by Captain Davis and stated that he pushed the slot open and it was possible that he hit Owobu's hand. ECF No. 22-3, p. 4. Bush also claimed that he was injured during the closing of the slot. ECF No. 1, p. 8. Bush claimed that he was trying to throw trash on to the tier when Owobu pushed the feed up slot closed, injuring Bush's finger. ECF No. 22-7, pp. 1–2.

Owobu denies injuring Bush as alleged.  He avers that he did not observe Bush standing near the cell door when he closed and locked the slot. ECF No. 22-11, ¶ 7. Owobu further claims that at no time while closing and locking the feed up slot did he observe Bush's hand in the slot. *Id*.

Guidelines have been promulgated for an officer to follow to defuse and deescalate a situation where an inmate holds the feed up slot open or pushes the slot to harm an officer.  ECF No. 22-10, ¶ 7.  However, in circumstances where the inmate's non-compliant behavior would cause personal injury or breach the facility's security, an officer may apply an appropriate level of force without approval.  Officers are not required to risk personal safety before force is

applied.  *Id.*  At the conclusion of the IIU investigation, Davis recommended the case be closed. ECF No. 22-3, p. 4.

## II.     Rule Violation

As a result of the incident, Bush was served with a Notice of Inmate Rule Violation charging him with committing assault or battery on staff. ECF No. 22-6.  Bush appeared before Hearing Officer John Sandstrom on February 25, 2014. ECF No. 22-13, p. 1.  Bush testified at the hearing that, "I was pushing the slot with my left hand...sometimes it sticks...I was pushing it and the slot must have fell and hit the officer...I saw the officer holding his hand...the officer tried to close the slot again...I said hold on...the officer slammed the slot on my hand.  The officer was covering up himself and said I kicked the slot."  *Id.*, p. 2.  Bush was found guilty of the rule violation and sentenced to 365 days of segregation, and 365 days of good conduct credits were revoked. *Id.*, p. 3.  Sandstrom credited Owobu's version of events and did not find Bush's contention that Owobu fabricated the report credible. *Id.*

Bush filed an "appeal" to the Inmate Grievance Office ("IGO") regarding the guilty finding. ECF No. 22-14, ¶3a.   The grievance was referred to the Maryland Office of Administrative Hearings and a hearing was conducted by Administrative Law Judge Joh Leidig on September 24, 2014.  The grievance was denied and dismissed as without merit. *Id.*

On March 24, 2014, Bush filed another IGO grievance, complaining that he was assaulted by Owobu on January 11, 2013. *Id.*, ¶3b. Bush was directed to file supporting paperwork but failed to do so, and the grievance was administratively dismissed. *Id.*

## III.    Medical Treatment

Bush was evaluated by Nurse Adenike Omotosho after the incident.  ECF No. 22-12, p. 2. The nurse found that Bush's fifth finger on his left hand was not swollen and no fracture was

observed. Bush denied pain or discomfort. Minimal redness was noted. Bush was returned to his housing unit. *Id.*

Bush was seen by Physician Assistant John Moss on January 21, 2014, because of his complaint that his left hand was in pain due to it having been closed in the feed up slot the preceding week. *Id.*, p. 3.  No swelling was observed. Mild tenderness and mild pain with motion were noted. *Id.*, p. 4.

On April 8, 2014, Bush returned for further evaluation due to his continued complaints of pain in his hand. *Id.*, p. 5.  "[N]o joint deformity, heat, swelling, erythema, or effusion [were observed]. Full range of motion [was exhibited]." *Id.* Bush was referred to a physician for follow up. On April 24, 2014, x-rays of his left hand were taken which revealed no fracture, dislocation or subluxation. *Id.*, p. 9.

Bush was seen by medical personnel on June 7, 19, and 27, 2014, due to continued reports of left hand pain. Each examination was unremarkable as to the condition of Bush's hand.  ECF No. 22-12, pp. 10–16. On July 22, 2014, Bush was evaluated by Dr. Robustiano Barrera due to his continued complaints of left hand pain. *Id.*, p. 17–18. Bush's grip was normal and no crepitus was noted. Dr. Barrera ordered another x-ray of Bush's left hand and wrist. *Id.*

On August 15, 2014, Bush was seen by Nurse Dennis Martin. Bush reported left hand discomfort.  *Id.*, p. 22.  Again no swelling was noted and Bush appeared to have an appropriate range of motion. He was advised that the x-rays were within normal limits. *Id.*

Bush was examined due to complaints about his hand by Registered Nurse Practitioner Peggy Mahler on January 5, 2015. *Id.*, p. 28. At that time he advised that his pain medications were not helping; as a result, his medications were changed. *Id.*, pp. 28–29.   Examination of his hand was once again unremarkable.  *Id.*

## IV.    Procedural History

On July 23, 2014, Bush filed suit in this Court against Officer Emmanuel Owobu and JCI pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging a violation of his Eighth Amendment rights based on his allegation that his hand was slammed in the feed up slot by Owobu. ECF No. 1.

On February 9, 2015, Defendant JCI moved to dismiss the Complaint, ECF No. 16, and Judge Theodore Chuang[2] issued an Order dismissing the Complaint against JCI. ECF No. 19.

On August 26, 2015, Defendant Owobu filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment.  ECF No. 22.  Despite being notified of Owobu's filing, and that he was entitled to file materials in opposition, *see* ECF No. 23, Bush has not responded to the Motion. The Motion is nevertheless ripe for disposition, and the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014).

## DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court must believe the evidence of the nonmoving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The nonmoving party has the burden to show a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  "A material

---

[2] The case was subsequently reassigned to the undersigned due to a temporary imbalance in workload.

fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

### B.    Exhaustion

Owobu raises the affirmative defense of non-exhaustion and asserts Bush's claim has not been properly presented through the administrative remedy procedure and must be dismissed pursuant to 42 U.S.C. §1997e.  The Prisoner Litigation Reform Act provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Bush is subject to the strict requirements of the exhaustion provisions.  It is of no consequence that Bush is aggrieved by a single incident, as opposed to general conditions of confinement.  *See Porter v. Nussle*, 534 U.S. 516, 526–28 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  Exhaustion is also required even when the relief sought is not attainable through resort to the administrative remedy procedure.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).  A claim which has not been exhausted may not be considered by this court.  *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (internal quotation marks and citations omitted).

Thus, Bush's claim must be dismissed if Owobu raises the affirmative defense and also proves that Bush has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216–17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). The PLRA's exhaustion requirement is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim[s], appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after the prison authority denied relief").

Three purposes underlie the PLRA's exhaustion requirement: "[1] allowing a prison to address complaints about the program it administers before being subjected to suit, [2] reducing litigation to the extent complaints are satisfactorily resolved, and [3] improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. There are, however, exceptions to the exhaustion requirement. Where an extensive investigation is

conducted by Maryland's IIU and the defendants fail to prove by practical examples that inmates are allowed to file an ARP or an IGO complaint during the IIU investigation, and the inmate believes he is unable to file such a complaint, administrative remedies are exhausted because prison officials have been "provided . . . with ample notice and opportunity to address internally the issues raised." *Blake v. Ross*, 787 F.3d 693, 700–701 (4th Cir. 2015), *cert. granted sub nom. Ross v. Blake*, 136 S. Ct. 614 (2015) (finding defendant was not entitled to summary judgment on the basis of plaintiff's alleged failure to exhaust).   Here, Bush's complaint was fully investigated by the IIU. Moreover, his initial grievance to the IGO was investigated and he was provided a hearing on his claim.  Bush avers that he was not allowed to appeal any claims during the IIU investigation.   Considering Bush's two IGO filings, this assertion is dubious. Accordingly, while Bush may have exhausted the administrative remedies available to him, the court need not reach a final decision on exhaustion because Bush's claim fails on the merits.

### C.  Eighth Amendment Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  The extent of injury incurred is one factor indicative of whether the force used was necessary in a

particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Bush alleges in his unverified complaint that Owobu closed his hand in the feed up slot. Owobu avers that he did not see Bush's hand in the feed up slot and that he did not close Bush's hand or finger in the slot as alleged. Rather, Owobu asserts that Bush was away from the slot when Owobu closed it. Bush's medical records show that immediately after the incident Bush's fifth finger had mild redness: an "injury" consonant with Bush's having closed the slot on Owobu, an event the parties do not dispute. The remainder of Bush's medical records show no objective evidence of injury to Bush's hand.

Owobu's sworn statements, confirmed in part by the video of the tier, demonstrate that after Owobu's hand was injured he used one hand to forcefully close the slot. There is no dispute that Bush interfered with the closing of the slot and that the slot needed to be closed in order to maintain institutional security. Bush admitted to investigators that he breached the food slot. The force used by Owobu was simply the amount necessary to secure the feed up slot and maintain order in the institution.

Moreover, the injury demonstrated by the medical records, "mild redness," is not indicative of a guard who maliciously closed a slot on an unsuspecting inmate's hand. Bush's documented injuries are simply not consistent with the intentional closing of the slot on his hand. The record evidence does not support Bush's contention that excessive force was used against him.

Although the Court generally may not make credibility determinations on summary judgment, *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991), "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).   A Court may permit an inmate's claim to go to the jury only if the evidence, viewed in the light most favorable to the inmate, "support[s] a reliable inference of wantonness in the infliction of pain." *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).   The only other evidence of the event even occurring is Bush's bald allegation that Owobu closed his hand in the slot. Bush, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor.   Bush has failed to submit any evidence to support his claim or to put the material fact of this case—the use of force against him—in dispute.   Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), Bush's complaint is not verified.   Accordingly, Owobu is entitled to summary judgment as to Bush's excessive force claim.

### D.      Violation of Policy

To the extent Bush alleges Owobu violated policies and procedures in responding to Bush's holding the slot open, his claim is likewise without merit. State regulations do not provide a basis for a due process violation. *Weller v. Dept. of Soc. Services*, 901 F.2d. 387, 392 (4th Cir. 1990); *see also Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If the state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").[3]

### CONCLUSION

---

[3] Having found no constitutional violation, the Court need not address Owobu's defense of qualified immunity.

For the reasons set forth above, Defendant Owobu's Motion for Summary Judgment will be GRANTED.  A separate Order follows.


March 16, 2016                                                    _____/S/_____
Date                                                                      Catherine C. Blake
                                                                          United States District Judge